**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION**

| | |
|---|---|
| AL BUCHTAN, | |
| Plaintiff, | |
| | Civil Action No. 26-1446 |
| v. | |
| WASHINGTON COUNTY BOARD OF ELECTIONS; NICK SHERMAN, in his individual capacity; ELECTRA JANIS, in her individual capacity; and JOHN DOE, in his individual capacity, | JURY TRIAL DEMANDED |
| Defendants. | |

## <u>COMPLAINT</u>

1.     This case involves an unconstitutional attempt by Washington County officials—working in concert with the Pennsylvania State Republican Party and the Senate Republican Campaign Committee—to interfere in the Republican primary for the 46th Pennsylvania Senatorial District. The Defendants leveraged their governmental power to help their political ally, incumbent Senator Camera Bartolotta, fend off an anti-establishment primary challenge from Plaintiff Al Buchtan. While the Defendants' unlawful efforts may have paid off politically—through their improper and unconstitutional acts, the Defendants helped Bartolotta win the primary election—Buchtan brings this case to vindicate his constitutional rights and to take a stand against unlawful, cynical election interference by the Commonwealth's political elites.

### JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction over Buchtan's federal-law claims pursuant to 28 U.S.C. §§ 1331 and 1343, because those claims arise under 42 U.S.C. § 1983, 28 U.S.C. § 2201, and the Constitution of the United States. The Court has supplemental jurisdiction

over Buchtan's state-law claims pursuant to 28 U.S.C. § 1367, because those claims form part of the same case or controversy as Buchtan's federal claims.

3.     Venue is proper under 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to Plaintiff's claims occurred in Washington County, Pennsylvania, which lies within this District.

**PARTIES**

4.     Plaintiff Al Buchtan is a citizen of the United States and of the Commonwealth of Pennsylvania. He was a candidate in the May 19, 2026 Republican primary for State Senator from the 46th Senatorial District.

5.     Defendant Washington County Board of Elections (the "Board") has jurisdiction over the conduct of primary and general elections in Washington County, Pennsylvania, including the administration of voter registration. 25 P.S. § 2641(a). The Board consists of the county Commissioners of Washington County ex officio. 25 P.S. § 2641(b). The Washington County Commissioners are the final policymakers for the conduct of elections and the administration of voter registration in Washington County. The Board acts under color of state law.

6.     Defendant Nick Sherman is a Commissioner of Washington County and, ex officio, a member of the Board of Elections. He was first elected to the office of Commissioner in 2020. He is sued in his individual capacity.

7.     Defendant Electra Janis is a Commissioner of Washington County and, ex officio, a member of the Board of Elections. She was first elected to the office of Commissioner in 2024. She is sued in her individual capacity.

8.     Defendant John Doe is an official or employee of the Board who engaged in conduct described below. Despite Buchtan's reasonable investigation, John Doe's identity is

2

currently unknown and will be substituted by amendment when it is ascertained. Because John Doe's identity is currently unknown, it is possible that John Doe is, in fact, one of the other named Defendants. John Doe is sued in his individual capacity.

9. At all times relevant to this Complaint, the Defendants acted in concert with one another.

**FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

I. **Buchtan's Insurgent Senate Primary Challenge**

10. Bartolotta has served in the Pennsylvania Senate since January 2015.

11. Her District—the 46th Senatorial District—encompasses all of Washington County, all of Greene County, and a portion of Beaver County.

12. Bartolotta has risen through the ranks of the Senate GOP and now serves as the Senate Majority Caucus Chair.

13. Although Bartolotta has successfully ingratiated herself to the Pennsylvania political establishment, she has faced considerable criticism from the political grassroots in her District.

14. For example, in January 2026, the Washington County Republican Party Executive Committee passed a vote of no confidence in Bartolotta.

15. The no-confidence vote followed years of policy choices that had angered many conservative voters in the 46th Senatorial District, including Bartolotta's co-sponsorship of a 2019 bill authorizing universal no-excuse mail voting. Some leading conservatives have heavily criticized that law.

16. Bartolotta thus faced considerable political risk from an anti-establishment primary challenge.

17. In 2026, Buchtan mounted precisely such a challenge.

18. Buchtan's campaign focused on challenging the perceived political establishment and targeted Bartolotta for her ties to that establishment.

19. Buchtan's candidacy and his campaign communications are political expression protected by the First Amendment.

**II. Defendants' Political Alliance with Senator Bartolotta**

20. Defendants Sherman and Janis are political allies of Bartolotta.

21. Sherman and Janis are elected Republicans.

22. Like Bartolotta, Sherman and Janis are closely aligned with the state Republican political establishment.

23. Sherman and Janis both publicly and expressly supported Bartolotta's candidacy over Buchtan's.

24. On April 14, 2026, the Instagram account "cameraforsenate" published an advertisement (reflected below), paid for by Camera For Senate, stating that Senator Bartolotta was "Proud to be ENDORSED by Washington County Commissioners Nick Sherman and Electra Janis."



25.    As political allies and leading supporters of Bartolotta, Sherman and Janis had strong incentives to ensure that Bartolotta won the primary election.

26.    In addition, in their years serving as Commissioners, Sherman and Janis have collaborated with Bartolotta on a variety of initiatives involving Washington County. Bartolotta, Sherman, and Janis thereby developed a close working relationship through which they jointly advanced their own policy and political goals.

27.    On information and belief, considering the working relationship they had developed with Bartolotta, Sherman and Janis expected that Bartolotta being reelected would help

5

facilitate Sherman's and Janis's ability to pursue their own preferred policy and political agendas. This, in turn, would help their own electoral prospects.

28.    In contrast, on information and belief, Sherman and Janis expected that Buchtan would be less likely to support their preferred policy agenda. Instead, they expected Buchtan to pursue a more populist, anti-establishment agenda that would conflict with Sherman's and Janis's preferred policies.

29.    Sherman and Janis, together, constitute a majority of the three Commissioners who constitute the Board. Thus, they are together able to dictate the actions of the Board, regardless of the views of the third member of the Board.

### III.    The Dispute Over Buchtan's Residence

30.    Buchtan maintains two homes, each within the 46th Senatorial District.

31.    One home is located in Washington County, where Buchtan was registered to vote.

32.    The other home is located in Greene County.

33.    Regardless of which home constituted his legal residence, Buchtan would have been eligible to run in the 46th District.

34.    Three electors aligned with Bartolotta and the State Republican Party (Dave Ball, Steve Bucar, and Jeff Stewart) objected to Buchtan's nomination petition and asserted that he resided in Greene County rather than at the Washington County address listed on his petition. *In re Buchtan*, No. 120 M.D. 2026, slip op. at 1 (Pa. Commw. Ct. Apr. 2, 2026).

35.    After an evidentiary hearing, the Pennsylvania Commonwealth Court ruled on April 2, 2026 that Buchtan resided at his Greene County home and permitted him to remain on the ballot upon amendment of his petition to list that address. *Id.* at 19.

6

36. The Commonwealth Court found that Buchtan held a good-faith belief about his residence and had no intent to deceive. *Id.* at 19-20.

37. On April 10, 2026, the Pennsylvania Supreme Court affirmed the Commonwealth Court's decision. *See In re Buchtan*, 354 A.3d 477 (Pa. 2026) (mem.) (noting that opinions will follow).

38. Neither court found that Buchtan committed voter fraud or any other offense. Indeed, the judicial finding that Buchtan had acted in good faith directly contradicts any suggestion that Buchtan committed any election-related offense.

39. In addition, neither court addressed Buchtan's eligibility to vote—they addressed only issues related to his candidacy—and neither court entered any order that could be construed as requiring any action with respect to Buchtan's voter registration.

## IV. Defendants' Unlawful Cancellation of Buchtan's Voter Registration

40. On or about April 16, 2026, the Board canceled Buchtan's voter registration and removed him from the Washington County list of registered voters.

41. On information and belief, Sherman and Janis each participated in, supported, and approved this action.

42. The cancellation of Buchtan's voter registration came just days after Bartolotta publicly announced that Sherman and Janis had endorsed Bartolotta's campaign against Buchtan.

43. Defendants' cancellation of Buchtan's voter registration clearly violated both federal and state law.

44. Defendants' cancellation of Buchtan's voter registration violated the federal National Voter Registration Act ("NVRA") in that, among other things:

(a)   Defendants canceled Buchtan's voter registration immediately, without providing the pre-cancellation notice and opportunity to be heard required by 52 U.S.C. § 20507(d).

(b)   Defendants canceled Buchtan's voter registration immediately, without complying with the waiting period prescribed by 52 U.S.C. § 20507(d).

45.   Defendants' cancellation of Buchtan's voter registration violated Pennsylvania law in that, among other things:

(a)   Defendants canceled Buchtan's voter registration immediately, without providing the pre-cancellation notice and opportunity to be heard required by 25 Pa.C.S. § 1901(d).

(b)   Defendants canceled Buchtan's voter registration immediately, without complying with the waiting period prescribed by 25 Pa.C.S. § 1901(d).

46.   On information and belief, Defendants have not canceled the registration of other similarly situated voters in violation of the NVRA and Pennsylvania law but have instead complied with applicable law.

47.   Defendants canceled Buchtan's voter registration in retaliation for Buchtan's public criticism of Bartolotta, his candidacy against Bartolotta, and his criticism of the perceived political establishment and political status quo.

48.   Defendants would not have canceled Buchtan's voter registration in violation of federal and state law but for Buchtan's protected First Amendment activities.

49.   On information and belief, Defendants intended for the cancellation of Buchtan's voter registration to frustrate Buchtan's candidacy and to help fuel negative narratives that would harm Buchtan's campaign against Bartolotta.

50.    Bartolotta and/or her supporters and surrogates did, in fact, use the cancellation of Buchtan's voter registration as a basis to criticize Buchtan and to persuade voters not to support him.

51.    Election integrity and voting were central issues in the campaign between Buchtan and Bartolotta. Bartolotta had faced significant criticism from some constituents for her support of universal no-excuse mail voting, a policy that some leading conservatives had long criticized. Buchtan had made this a central issue in his challenge to Bartolotta. Thus, Bartolotta and her allies—including Defendants—had a very strong political incentive to create a perception (however meritless) that Buchtan was not a supporter of election integrity.

52.    As a result of the cancellation by Defendants, Buchtan was unable to vote in the May 19, 2026 primary election, an election in which he was a candidate.

## V.   Defamatory Campaign Mailers Attributing False Statements to a "Washington County Election Official"

53.    In the weeks leading up to the May 19 Primary Election, the Pennsylvania Senate Republican Campaign Committee ("SRCC") disseminated several mailers and mass text messages that made false and defamatory statements about Buchtan, attributing those statements to a "Washington County Election Official."

54.    In one mailer ("Mailer 1"), the SRCC stated: "State Senate Candidate Al Buchtan is under active criminal investigation by the Attorney General's Office for voter fraud." That statement was followed by a footnote that attributed the representation to an "Email by Washington County Election Official."

55.    On the other side of Mailer 1, the SRCC stated "How can you vote for liberal Al Buchtan when he is under active criminal investigation by the Attorney General?" That statement

was also followed by a footnote that attributed the representation to an "Email by Washington County Election Official."

56.     True and accurate copies of each side of Mailer 1 are reflected below.





57.    Mailer 1 was widely distributed to residents of the 46th Senatorial District.

58.    The representations contained in Mailer 1 were false.

59.    In fact, Buchtan was **not** under active criminal investigation by the Attorney General's Office for voter fraud or for any other offense.

60.    Any investigation would have been manifestly frivolous in light of the Pennsylvania courts' finding that Buchtan had acted in good faith.

61.    Counsel for Buchtan reached out to the Attorney General's Office and received no indication that any active investigation existed.

62.    Neither the Attorney General's Office nor any other law-enforcement agency took any steps to investigate Buchtan for purported voter fraud.

11

63. In light of the footnotes contained in Mailer 1, an unidentified "Washington County Election Official" falsely stated that Buchtan was under active criminal investigation by the Attorney General's Office for voter fraud.

64. As described above, that representation is false.

65. Moreover, there was no plausible basis for any person who knew the facts that John Doe would have been aware of, as a Washington County elections official, to believe that the representation was or may be true.

66. Thus, the representation was made either with knowledge of its falsity or with reckless indifference to the truth or falsity of the representation.

67. Because the Board is the election authority for Washington County, any "Washington County Election Official" must be an employee or member of the Board.

68. Buchtan has sued the unidentified "Washington County Election Official" under the name "John Doe," with the intention of amending his complaint once the specific identity of "John Doe" is ascertained.

69. In a second mailer ("Mailer 2"), the SRCC stated: "Al Buchtan is under active investigation by the Attorney General's Office for voter fraud." That statement was followed by a footnote that attributed the representation to an "Email by Washington County Election Official."

70. A true and accurate copy of Mailer 2 is reflected below.

12



71.    Mailer 2 was widely distributed to residents of the 46th Senatorial District.

72.    In light of the footnote contained in Mailer 2, an unidentified "Washington County Election Official" falsely stated that Buchtan was under active investigation by the Attorney General's Office for voter fraud.

73.    As described above, that representation is false.

74.    Moreover, there was no plausible basis for any person who knew the facts that John Doe would have been aware of, as a Washington County elections official, to believe that the representation was or may be true.

75.    Thus, the representation was made either with knowledge of its falsity or with reckless indifference to the truth or falsity of the representation.

76.    On information and belief, the "Washington County Election Official" mentioned in Mailer 2 is the same individual as the "Washington County Election Official" mentioned in Mailer 1 (*i.e.*, Defendant John Doe).

77.    The SRCC also sent a mass text (the "Mass Text") stating: "Little known fact... Al Buchtan is under active investigation for voter fraud. *" The asterisk in that statement was apparently intended to serve the function of a footnote. Near the end of the Mass Text, the SRCC stated "*Election official email." Thus, the Mass Text apparently attributed the statement that "Al Buchtan is under active investigation for voter fraud" to an "Election official email."

78.    The Mass Text further stated: "How can we elect someone under investigation for potential voter fraud and could face jail time?*" The Mass Text similarly attributed this statement to an "Election official email."

79.    On information and belief, the Mass Text was widely distributed to residents of the 46th Senatorial District.

80.    In light of the Mass Text, an unidentified "Election official" falsely stated that Buchtan was "under active investigation for voter fraud."

81.    As described above, that representation is false.

82.    Moreover, there was no plausible basis for any person who knew the facts that John Doe would have been aware of, as a Washington County elections official, to believe that the representation was or may be true.

83.    Thus, the representation was made either with knowledge of its falsity or with reckless indifference to the truth or falsity of the representation.

84.    On information and belief, the "Election official" mentioned in the Mass Text is the same individual as the "Washington County Election Official" mentioned in Mailer 1 and Mailer 2 (*i.e.*, Defendant John Doe).

14

85.     On information and belief, John Doe shares the political and policy interests of Sherman and/or Janis and thus—like those Defendants—had a strong incentive to see Bartolotta defeat Buchtan in the Republican Senatorial Primary.

86.     John Doe made the false statements reflected in Mailer 1, Mailer 2, and the Mass Text in retaliation for Buchtan's public criticism of Bartolotta, his candidacy against Bartolotta, and his criticism of the perceived political establishment and political status quo.

87.     John Doe would not have falsely represented that Buchtan was the subject of an active investigation but for Buchtan's protected First Amendment activities.

88.     On information and belief, John Doe intended for the false statements described above to be used in campaign advertising against Buchtan, with the hope that such advertising would harm Buchtan's campaign against Bartolotta.

89.     As noted above, election integrity and voting were central issues in the campaign between Buchtan and Bartolotta. Thus, Bartolotta and her allies—including John Doe—had a very strong political incentive to create a perception (however meritless) that Buchtan was not a supporter of election integrity.

90.     On information and belief, the false statements attributable to John Doe in Mailer 1, Mailer 2, and the Mass Text impacted the voting decisions of an appreciable number of individuals who voted in the Republican Primary Election for the 46th Senatorial District on May 19, 2026, causing those individuals not to vote for Buchtan.

91.     Bartolotta prevailed over Buchtan in that primary election.

**CLAIMS FOR RELIEF**

**COUNT I**
42 U.S.C. § 1983 — First Amendment Retaliation – Cancellation of Voter Registration
(Against Defendants Sherman and Janis in their individual capacities)

92.    Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

93.    Buchtan engaged in expressive activity protected under the First Amendment. His candidacy for the State Senate, his campaign in opposition to Senator Bartolotta, and his speech in connection with that campaign constitute core political expression protected by the First Amendment.

94.    Sherman and Janis, as members of the Board, caused the Board to cancel Buchtan's voter registration in clear violation of federal and state law, removed him from the voter rolls, and prevented him from voting in the election in which he was a candidate.

95.    These acts were sufficient to deter a person of ordinary firmness from exercising his or her First Amendment rights. In particular, a person of ordinary firmness would be deterred by the prospect of losing the opportunity to vote and the prospect of being portrayed as having engaged in election-related misconduct, potentially including criminal misconduct. Such a person also would be deterred by the prospect of having the loss of voter registration being used to undermine his or her campaign for elective office.

96.    There is a causal connection between Buchtan's protected activity and Sherman and Janis's retaliatory actions. As described above, Sherman and Janis caused the Board to cancel Buchtan's voter registration in retaliation for Buchtan's public criticism of Bartolotta, his candidacy against Bartolotta, and his criticism of the perceived political establishment and political status quo.

16

97.     Sherman and Janis would not have caused the Board to cancel Buchtan's voter registration in violation of federal and state law but for Buchtan's protected First Amendment activities.

98.     Sherman and Janis acted under color of state law in causing the Board to cancel Buchtan's voter registration.

99.     As a result of Sherman's and Janis's conduct, Buchtan suffered the damages described herein. Buchtan is entitled to declaratory and injunctive relief, compensatory damages, punitive damages, and attorneys' fees and costs under 42 U.S.C. § 1988.

## COUNT II
42 U.S.C. § 1983 — First Amendment Retaliation – Cancellation of Voter Registration
(Against Defendant Washington County Board of Elections) (*Monell* Liability)

100.    Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

101.    Defendant Washington County Board of Elections is liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978) for the conduct alleged in Count I.

102.    The cancellation of Buchtan's voter registration was the act of Defendants Sherman and Janis, who together constitute a majority of the Board, can together dictate the actions of the Board regardless of the vote of the remaining member of the Board, and are the Board's final policymakers for the conduct of elections and the administration of voter registration.

103.    Sherman's and Janis's acts as members of the Board directly resulted in the cancellation of Buchtan's voter registration in violation of state and federal law and thus represent official Board policy.

104.    As a result of the Defendants' conduct, Buchtan suffered the damages described herein. Buchtan is entitled to declaratory and injunctive relief, compensatory damages, and attorneys' fees and costs under 42 U.S.C. § 1988.

## COUNT III
### 42 U.S.C. § 1983 – First Amendment Retaliation – Deprivation of Interest in Reputation
### (Against Defendant John Doe in his individual capacity)

105.    Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

106.    Buchtan engaged in expressive activity protected under the First Amendment. His candidacy for the State Senate, his campaign in opposition to Senator Bartolotta, and his speech in connection with that campaign constitute core political expression protected by the First Amendment.

107.    Defendant John Doe published false and defamatory statements about Buchtan with the knowledge and intent that those statements would be used against Buchtan in his Senate campaign.

108.    On information and belief, John Doe published his false and defamatory statements to an agent of the SRCC. On information and belief, John Doe knew and intended that the SRCC would broadly disseminate those false statements to voters within the 46th Senatorial District.

109.    These acts were sufficient to deter a person of ordinary firmness from exercising his or her First Amendment rights. In particular, a person of ordinary firmness would be deterred by the prospect of being publicly (and falsely) accused of having committed crimes and being under government investigation. Such a person also would be deterred by the prospect of having such false statements used to undermine his or her campaign for elective office.

110.    There is a causal connection between Buchtan's protected activity and John Doe's retaliatory actions. As described above, John Doe made false and defamatory statements regarding Buchtan in retaliation for Buchtan's public criticism of Bartolotta, his candidacy against Bartolotta, and his criticism of the perceived political establishment and political status quo.

111. John Doe would not have made false and defamatory statements regarding Buchtan but for Buchtan's protected First Amendment activities.

112. As reflected by his identifying himself as an election official, John Doe acted under color of state law.

113. As a result of the Defendants' conduct, Buchtan suffered the damages described herein. Buchtan is entitled to declaratory and injunctive relief, compensatory damages, and attorneys' fees and costs under 42 U.S.C. § 1988.

**COUNT IV**
42 U.S.C. § 1983 — Deprivation of a Liberty Interest in Reputation Without Due Process
(Against Defendant John Doe in his individual capacity)

114. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

115. As described above, on one or more occasions, Defendant John Doe published the false representation that Buchtan was under active criminal investigation by the Pennsylvania Attorney General.

116. As described above, that representation was false.

117. As described above, John Doe either knew the statement was false or was recklessly indifferent to whether the statement was true or false.

118. John Doe's false statements were stigmatizing to Buchtan. Among other things, John Doe's false statements imputed criminal conduct to Buchtan, indicated that he was subject to criminal and other law-enforcement investigations, indicated that he did not take election integrity seriously, implied that he was a liar and/or had made false statements, and deterred others from associating with and/or voting for him.

119. John Doe's statements were made publicly. As reflected by their republication in Mailer 1, Mailer 2, and the Mass Text, John Doe's false statements were disseminated to third

19

parties, who in turn disseminated John Doe's false and defamatory statements to countless residents of the 46th Senatorial District, as well as others.

120. On information and belief, John Doe intended the widespread dissemination of his false statements regarding Buchtan and intended for those false statements to impact the outcome of the Republican Primary Election for the 46th Senatorial District.

121. John Doe's defamatory and stigmatizing acts directly implicated, changed, and extinguished Buchtan's rights under the United States and Pennsylvania Constitutions, including Buchtan's rights to Free Speech and Association under the First Amendment to the United States Constitution and Article I, § 7 of the Pennsylvania Constitution; his right to vote under the United States and Pennsylvania Constitutions; his rights under the National Voter Registration Act; and his reputational rights under Article I, §§ 1 and 11 of the Pennsylvania Constitution.

122. As reflected by his identifying himself as an election official, John Doe acted under color of state law when he engaged in the defamatory and stigmatizing acts.

123. As a result of John Doe's conduct, Buchtan suffered injury to his reputation and the other damages described herein. Buchtan is entitled to declaratory and injunctive relief, compensatory damages, and attorneys' fees and costs under 42 U.S.C. § 1988.

## COUNT V
### Defamation
### (Against John Doe)

124. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

125. The statement that Buchtan was the subject of a criminal investigation by the Pennsylvania Office of Attorney General for voter fraud was defamatory. It imputed criminal conduct to Buchtan and is defamatory per se.

20

126.    Defendant John Doe published the statement by sending the email to one or more third parties, with the intent that its content would be distributed to thousands of voters in the 46th Senatorial District. The statement applied to Buchtan, and its recipients understood both its defamatory meaning and that it referred to Buchtan.

127.    The statement was false, and Defendant John Doe acted with actual malice when he published it with knowledge that it was false or with reckless disregard for its truth. Buchtan was not the subject of any investigation by the Office of Attorney General.

128.    Buchtan also suffered harm to his reputation and to his candidacy as a result of its publication.

129.    Buchtan is entitled to compensatory and punitive damages against Defendant John Doe in an amount to be proved at trial.

### COUNT VI
False Light Invasion of Privacy
(Against John Doe)

130.    Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

131.    Defendant John Doe gave publicity to the statement that Buchtan was the subject of a criminal investigation by the Office of Attorney General by disseminating it to the SRCC with the intent that its content would be communicated to thousands of voters in the 46th Senatorial District.

132.    The statement placed Buchtan before the public in a false light. Buchtan was not the subject of any investigation by the Office of Attorney General, and a portrayal of a candidate as being the subject of a criminal investigation for voter fraud would be highly offensive to a reasonable person.

133.    Defendant John Doe had knowledge of, or acted in reckless disregard as to, the falsity of the statement and the false light in which it placed Buchtan.

134.    Buchtan is entitled to compensatory and punitive damages against Defendant John Doe in an amount to be proved at trial.

**COUNT VII**
Right to Reputation Under the Pennsylvania Constitution
(Against John Doe in his individual capacity)

135.    Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

136.    The Pennsylvania Constitution recognizes and protects reputation as a fundamental right. Article I, Section 1 includes among the inherent and indefeasible rights of all persons the right of "acquiring, possessing and protecting property and reputation." Pa. Const. art. I, § 1. Article I, Section 11 provides that "every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law." Pa. Const. art. I, § 11.

137.    Defendant John Doe injured Buchtan's reputation by publishing the false statement that Buchtan was the subject of a criminal investigation by the Pennsylvania Office of Attorney General for voter fraud.

138.    Under Article I, Section 11 of the Pennsylvania Constitution, Buchtan is entitled to a remedy for the injury to his reputation.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendants and grant the following relief:

A.    Compensatory damages in an amount to be proved at trial;

B.    Injunctive, declaratory, and name-clearing relief;

C.    Punitive damages;

D.      Attorneys' fees and costs under 42 U.S.C. § 1988;

E.      Pre-judgment and post-judgment interest at the maximum rate permitted by law;

F.      Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: July 3, 2026

Respectfully submitted,

**COMBER MILLER LLC**

*/s/ Michael A. Comber*
Michael A. Comber
PA I.D. 81951
Devin M. Misour
PA I.D. 311892
300 Koppers Building
436 Seventh Avenue
Pittsburgh, Pennsylvania 15219
Telephone: (412) 894-1384
Facsimile: (412) 291-2109
mcomber@combermiller.com
dmisour@combermiller.com

**JAMES OTIS LAW GROUP, LLC**
Michael Martinich-Sauter*
Ken C. Capps*
Daniel C. Carter*
530 Maryville Centre Drive, Suite 230
St. Louis, Missouri 63141
Telephone: (314) 949-3018
michael.martinich-sauter@james-otis.com

*\* Pro hac vice application forthcoming*

***Counsel for Plaintiff Al Buchtan***

23